NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**08-904**

**STATE OF LOUISIANA**

**VERSUS**

**DAMON BROESKE FRYE**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 4161-07
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

**OSWALD A. DECUIR**
**JUDGE**

**********

Court composed of Oswald A. Decuir, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**John F. DeRosier**
**District Attorney**
**David L. Kimball**
**Assistant District Attorney**
**Carla S. Sigler**
**Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, LA 70601**
**(337) 437-3400**
**Counsel for Appellee:**
        **State of Louisiana**

**Mark O. Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
        **Damon Broeske Frye**

**DECUIR, Judge.**

Defendant, Damon Broeske Frye, was indicted on one count of first degree murder, a violation of La.R.S. 14:30, attempted first degree murder, a violation of La.R.S. 14:30 and 14:27, armed robbery, a violation of La.R.S. 14:64, and aggravated kidnapping, a violation of La.R.S. 14:44. Defendant filed a "Motion to Suppress Statements of the Accused and any Physical Evidence Seized as Fruits of Those Statements." The trial court denied Defendant's motion. For the purpose of trial, the State severed the first-degree murder charge, and trial proceeded on that charge alone. The State did not seek the death penalty in this case. The jury returned a verdict of guilty of first degree murder. Defendant waived all delays and was immediately sentenced to life imprisonment without the possibility of parole. The State dismissed the remaining charges.

Defendant has perfected a timely appeal, wherein he alleges one assignment of error. Defendant asserts that the trial court erred when it denied his motion to suppress statements, his confession, and physical evidence discovered as a result of the statements.

For the following reasons, we find that there was no error in the trial court's ruling or that any error was harmless and affirm Defendant's conviction.

## FACTS

On December 1, 2006, at approximately 2:50 a.m., Defendant entered the Circle K in Sulphur, Louisiana, armed with a handgun. He took thirty-five dollars from the till, a backpack full of liquor and cigarettes, and shot the clerk, Lucy Moore, point blank in the back of her head. The victim died at the scene as a result of the gunshot wound. Also at the scene was Dax Valentine, who had walked into the store during the robbery. Defendant shot him in the arm, then forced Valentine to drive him away from the Circle K. Shortly thereafter, he allowed Valentine to leave in his

vehicle. Valentine, who knew Defendant from childhood, went immediately to the hospital and reported the matter to the police. Defendant was apprehended the next day at the home of a friend, Michael Moore.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The record does not indicate that the trial court advised the Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform the Defendant of the provisions of article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## DENIAL OF MOTION TO SUPPRESS

For his sole assignment of error, Defendant asserts the trial court erred when it denied his motion to suppress statements, a confession, and physical evidence. He argues that he had invoked his right to remain silent until he could obtain an attorney. He contends that he told the initial arresting officers that he desired defense counsel but that his request was ignored by law enforcement officers.

> A defendant's right to counsel is guaranteed in LSA Const. art. I, § 13. When counsel is requested, interrogation must cease; officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney. *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990). If before or during interrogation an accused asks for counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated, custodial interrogation even if he has been advised of his rights. Such an accused is not subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates

2

further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378 (1981).

*State v. Williams,* 01-1650, p. 7 (La. 11/1/02), 831 So.2d 835, 842-43.

The Supreme Court stated the invocation of [the right to counsel] "... requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil* [*v. Wisconsin* ], 501 U.S. [171] at 178, 111 S.Ct. [2204] at 2209, 115 L.Ed.2d 158 (emphasis in original).

*State v. Payne,* 01-3196, pp. 9-10 (La. 12/4/02), 833 So.2d 927, 935.

A trial judge is vested with vast discretion when ruling on a motion to suppress, and such ruling will not be overturned absent a showing of abuse of that discretion. Furthermore, an appellate court may review the entire record, including testimony given at trial, in addition to the testimony given at the suppression hearing, to determine whether the trial court's pre-trial ruling on a motion to suppress was in error. *State v. Leger,* 05-011 (La. 7/10/06), 936 So.2d 108.

The following testimony was adduced at the suppression hearing. Todd Huber, a detective with the Lake Charles Police Department, testified that he and Beau Bartel, a deputy with the United States Marshal's Office, went to the home of Michael Moore because he had had prior dealings with Defendant and Moore and knew that they were close friends. Moore lived in a trailer located next to a canal. Moore came to the door almost immediately and indicated he was calling the police as they arrived. Defendant was standing behind him. The two officers ordered Defendant to the floor and cuffed him. Moore was crying and yelling for the officers not to hurt Defendant and was getting in their way. Detective Huber stated he *Mirandized* Defendant immediately and asked him if there were other persons or weapons in the residence. Defendant answered that "he had thrown the gun in the canal." The detective stated that he called fellow officers, Leslie Blanchard and Gerald Thomas,

3

to come to the residence to take custody of Defendant. The detective stated that Moore was continuously getting in the way and "ranting and raving." He recalled that although Moore had said something about Defendant not having to say anything until he got a lawyer, Defendant never asked for an attorney in his presence.

Deputy Beau Bartel also testified at the hearing. His testimony was essentially the same as Detective Huber's testimony. He stated that Moore was hollering not to hurt Defendant and told Defendant to not "say anything to them until I get you an attorney, or something to that effect." However, Defendant never told them he wanted a lawyer. Deputy Bartel testified that other than asking about whether there were any other persons or weapons in the residence, they did not attempt to question Defendant; their role was strictly fugitive apprehension.

Gerald Thomas, a detective with the Calcasieu Parish Sheriff's Office, was involved in the investigation and took custody of Defendant at the Moore residence shortly after he was called by Detective Huber. He testified that Defendant appeared calm. He was advised that Defendant had been *Mirandized*; however, he orally *Mirandized* him twice after he put Defendant into his vehicle and then again with a form after they reached the police station. At the police station, Defendant made a video confession. The detective testified that at no time did Defendant ask for a lawyer.

The next day, Defendant was driven back to the Moore residence so that he could point out where he had tossed the gun into the canal. However, once there, he advised the two transportation officers, Robert Faulk and Kenny Higgenbotham, that he needed to talk to Detective Thomas. Detective Thomas testified that Defendant said he had hidden the gun in an old barn located close to the canal. Detective

4

Thomas stated he *Mirandized* Defendant again at this point because he had changed his story. The gun was located in the barn.

Finally, Damon Frye testified that he had evoked his right to have counsel present. He stated that he told Deputy Bartel he desired to have counsel. However, he admitted he never repeated his invocation to anyone else at any time subsequent to his initial declaration. When asked why, if he had evoked his right to counsel, did he voluntarily give a confession, he responded, "I just felt like saying it."

The trial court denied Defendant's motion to suppress in open court, finding that the testimony did not establish that Defendant evoked his right to have counsel present during interrogation of any kind.

In brief, Defendant argues:

> The fact that Mr. Frye had evoked his right to counsel, and had chosen not to make a statement is also supported by the testimony of Detective Thomas. He testified that when he took custody of Mr. Frye from Officers Huber and Bartel, he again *Mirandized* Mr. Frye, and Mr. Frye indicated that he understood his rights and that he did not wish to make a statement. It was only after Detective Thomas let him sit in a cold car for a while, later re-*Mirandized* him, and then again asked him if he wanted to make a statement.

A review of Detective Thomas' testimony, both at the suppression hearing and at trial, indicates this assertion is not correct. Detective Thomas stated that after he read Defendant his rights, Defendant indicated that he understood those rights. However, Detective Thomas never testified Defendant stated that he did not wish to make a statement. Conversely, he testified Defendant began to freely discuss the crime after he indicated he understood his rights.

Defendant argues there was clear and unequivocal testimony that Defendant evoked his rights to Deputy Bartel; therefore, citing this court, he contends that "knowledge of a suspect's request for counsel made to one officer is imputed to all the other police officers involved in the case." *State v. Dotson,* 98-926, p. 11

5

(La.App. 3 Cir. 11/24/99), 747 So.2d 686, 693, *writ denied*, 99-3616 (La. 3/17/00), 756 So.2d 1142. He also points to inconsistencies in the officers' testimonies. Detective Thomas stated that he located the gun in the barn, and Officers Faulk and Higgenbotham both said they had located the gun. Defendant argues: "This was not harmless error. At trial, Mr. Frye's statements and assistance in locating the pistol were keystones in the state's case."

However, even if the trial court erred when it found that Defendant did not evoke his right to have an attorney present during interrogation, an erroneous denial of a motion to suppress is subject to a harmless error analysis. *Leger,* 936 So.2d 108. In the current case, the error would be harmless. "To be harmless, the evidence must not have contributed to the verdict. Factors to be considered include the importance of the evidence to the state's case, the presence or absence of additional corroboration, and the overall strength of the state's case." *State v. Swain,* 04-1001, p. 10 (La.App. 5 Cir. 3/1/05), 900 So.2d 82, 89, *writ denied*, 05-1333 (La. 1/9/06), 918 So.2d 1040.

The State's case was very strong in this instance and not dependent on the confession and the gun used to murder the victim. The State presented other compelling evidence. Dax Valentine testified and positively identified Defendant as the man he encountered in the Circle K with a handgun. He testified that he was a childhood friend of Defendant. On the night of the murder, he drove to the Circle K between 2:30 a.m. and 3:00 a.m. and interrupted a robbery in progress. Even before he saw Defendant, he was shot in the back of his arm. Defendant grabbed him and dragged him over to where the victim was kneeling and filling a backpack with bottles of liquor. When she dropped a bottle, Defendant shot her. Valentine testified he did not actually see Defendant shoot the victim as he took the opportunity of

6

Defendant's distraction to rush out of the store, terrified. Defendant followed him out and, at gunpoint, forced Valentine to drive him away from the store.

Moreover, the State presented at trial the testimony of Patrick Walsh, the regional loss prevention manager for Circle K stores. He described and demonstrated the surveillance PC digital video equipment that had been installed in the Circle K. He had with him the surveillance DVD of the night of the murder. The DVD clearly showed Defendant, dressed in camouflage, entering the store, holding out a handgun, confronting the victim, dragging Valentine by his arm, and showed a horrified Valentine fleeing the store.

There was also the evidence collected from Moore's residence discovered pursuant to a valid and uncontested consent to search. The evidence was the camouflage clothing exactly like the camouflage clothing Defendant was wearing in the surveillance DVD and a backpack full of liquor bottles.

We cannot say the trial court abused its discretion when it denied Defendant's motion to suppress the evidence. The only evidence indicating that Defendant may have evoked his right to have counsel present was his own self-serving testimony. However, even without his video taped confession and the handgun, the evidence – Valentine's eyewitness testimony and the DVD which clearly showed Defendant with a handgun, corroborating Valentine's testimony, together with the clothing and backpack – was sufficiently strong that the jury could have convicted him of first degree murder beyond a reasonable doubt.

## DECREE

For foregoing reasons, the Defendant's conviction for first degree murder is affirmed. The trial court is directed to inform the Defendant of the provisions of La.Code Civ.P. art. 930.8 by sending appropriate written notice to the Defendant

within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.

**AFFIRMED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Rule 2-16.3, Uniform Rules, Courts of Appeal.