STATE OF LOUISIANA
v.
EMMANUEL JOSEPH LOWE
2008 KA 1847.
Court of Appeals of Louisiana, First Circuit.
February 13, 2009.
Douglas Moreau, District Attorney, Ron Gathe, Dylan C. Alge, Assistant District Attorneys, Attorneys for Appellee, State of Louisiana.
David W. Price, Kathryn E. Sheely, Baton Rouge Capital Conflict Office, Attorney for Defendant/ Appellant Emmanuel J. Lowe
BEFORE: PETTIGREW, McDONALD, HUGHES, JJ.
McDONALD, J.
Defendant, Emmanuel Lowe, was charged by grand jury indictment with one count of first degree murder, a violation of La. R.S. 14:30. Defendant initially entered a plea of not guilty and filed a motion to suppress his confession. The trial court granted the defendant's motion to suppress. The State applied to this court for a supervisory writ of review of that ruling.
This court granted the State's writ application and reversed the trial court's grant of the motion to suppress in State v. Lowe, XXXX-XXXX (La. App. 1st Cir. 10/02/06) (unpublished), and on November 20, 2006, denied defendant's application for rehearing of that decision. Following the rulings of this court, defendant withdrew his original plea of not guilty and entered a guilty plea under State v. Crosby, 338 So.2d 584 (La. 1976), reserving his right to appeal the decision on the motion to suppress. Pursuant to the plea agreement, the trial court sentenced defendant to a term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant appeals, citing the following assignment of error:
The Court of Appeal committed an error of law when it reversed the trial court's granting of the defendant's motion to suppress without finding that the trial court had committed an abuse of discretion.

FACTS
On November 30, 2005, defendant robbed Marc Cloy at the St. John Apartments located on Harrell's Ferry Road in East Baton Rouge Parish. After robbing Cloy, defendant shot him and fled. Cloy died as a result of multiple gunshot wounds. Following his arrest, defendant provided a videotaped statement admitting he shot Cloy.

MOTION TO SUPPRESS CONFESSION
In his sole assignment of error, defendant argues that this court erred as a matter of law when it reversed the trial court's granting of his motion to suppress confession without finding the trial court abused its discretion. Despite our earlier decision of this issue on supervisory writs, this court is not precluded from further review of the issue raised by defendant. See State v. Humphrey, 412 So.2d 507, 512 (La. 1981). Upon review, we find the record in this case fully supports our previous decision on the issue presented in the writ application and is devoid of any additional circumstances and/or evidence that would lead us to change the conclusion we reached therein.
On July 17, 2006, the trial court conducted a hearing on defendant's motion to suppress confession. During this hearing, the State submitted and played a videotape of defendant's confession. The videotaped statement showed Detective Leonardo Moore of the East Baton Rouge Parish Sheriffs Office explaining defendant's Miranda rights to him. Defendant signed the waiver of rights form, before being interviewed. During the two-hour interview, defendant eventually admitted he killed Cloy and described the exact manner in which it occurred.
Detective Moore also testified at the motion to suppress hearing. According to Detective Moore, defendant waived his Miranda rights orally and in writing. Detective Moore specifically denied defendant requested a lawyer during questioning.
The following day, the trial court ruled that defendant had invoked his right to counsel during this questioning and granted the defendant's motion to suppress. In support of its ruling, the trial court stated that based on its review of the videotaped statement, defendant asked Detective Moore whether he could get a lawyer before he spoke with him. The trial court continued by stating that Detective Moore "blew it off by telling defendant to "go ahead" and "get your business out." The trial court also noted that Detective Moore had been "smooth" in his delivery of every question but once defendant mentioned the word "lawyer," it appeared to the trial court that Detective Moore knew defendant was asking for an attorney.
Our review of the videotaped statement reveals that after being interviewed by Detective Moore for over an hour, defendant repeatedly denied any involvement in the murder. Detective Moore methodically revealed physical evidence, surveillance video, and statements from other witnesses placing defendant at the scene as the shooter, contradicting defendant's alibi. Faced with the mounting evidence against him, defendant asked Detective Moore, "Do I need a lawyer if 1 talk?" Detective Moore responded for defendant to go ahead and "get his business straight."
In Miranda v. Arizona, 384 U.S. 436, 469-73, 86 S.Ct. 1602, 1625-27, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins. The right to counsel established in Miranda was one of a series of recommended procedural safeguards that were not themselves rights protected by the Constitution, but were instead measures to insure that the right against compulsory self-incrimination was protected. Davis v. U.S., 512 U.S. 452, 457, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994).
The right to counsel recognized in Miranda is of such importance that it requires the special protection of the knowing and intelligent waiver standard. If the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. This second layer of prophylaxis for the Miranda right to counsel is designed to prevent the police from badgering a defendant into waiving his previously asserted Miranda rights. To that end, the Supreme Court has held that a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present. Davis v. U.S., 512 U.S. at 458, 114 S.Ct. at 2354-55.
Thus, situations arise wherein courts must determine whether the accused actually invoked his right to counsel. In order to avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, Supreme Court precedents do not require the cessation of questioning. The likelihood that a suspect would wish counsel to be present is not the test for determining whether such a right has been exercised. See Davis v. U.S., 512 U.S. at 458-59, 114 S.Ct. at 2355.
Rather, the suspect must unambiguously request counsel. As the United States Supreme Court has observed, a statement either is such an assertion of the right to counsel, or it is not. The Supreme Court further articulated that a suspect must state his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement as a request for an attorney. If the statement fails to meet the requisite level of clarity, the officers need not stop questioning the suspect. See Davis v. U.S., 512 U.S. at 459, 114 S.Ct. 2355.
In Davis v. United States, the Supreme Court held that an accused's remark of "Maybe I should talk to a lawyer" was not a request for counsel, and the law enforcement agents were not required to stop questioning him. Under the specific facts of Davis, once the accused made this statement, the law enforcement officers clarified whether he was requesting an attorney at that time. However, the Supreme Court declined to adopt a rule requiring police officers to ask clarifying questions. See Davis v. United States, 512 U.S. at 461, 114 S.Ct. at 2356.
The Louisiana Supreme Court faced a similar issue in State v. Payne, XXXX-XXXX, p. 5 (La. 12/4/02), 833 So.2d 927, 932, wherein a suspect asked a detective "may I call a lawyer-can I call a lawyer?" Applying the Davis rationale, the Louisiana Supreme Court held as a matter of law that such statements were insufficient to invoke the suspect's right to counsel. The Louisiana Supreme Court reiterated that if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, the cessation of questioning is not required. The suspect must articulate his desire to have counsel present with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. State v. Payne, XXXX-XXXX at p. 10,833 So.2dat935.
Accordingly, we find that defendant's question was not a clear invocation of his right to counsel, which would have required Detective Moore to cease questioning. The trial court's finding that defendant did invoke his right to counsel does not heed jurisprudence from the United States Supreme Court stating that such statements invoking the right to counsel must be clear. The fact that the defendant's statement in this case was in the form of a question cannot be construed by a reasonable police officer under these circumstances as a clear invocation of his right to counsel. We are mindful that the United States Supreme Court, in Davis, emphasized that the likelihood that a suspect would wish for counsel is not the test for determining whether the right to counsel has been exercised. Rather, the test must be an unambiguous request. In the present case, we cannot say defendant's statement of "Do I need a lawyer if I talk?" is an unambiguous request for the presence of an attorney. Moreover, Detective Moore had no obligation to seek clarification of defendant's statement. See Davis v. U.S., 512 U.S. at 461, 114 S.Ct. at 2356.
This portion of the assignment of error is without merit.
Defendant further argues that he did not voluntarily waive his right to have an attorney present during his interrogation. Defendant asserts that his statement was not free and voluntary because the circumstances surrounding his statement were so coercive that it was rendered involuntary. Specifically, defendant contends he was repeatedly told by the police that he would get "the needle" if he did not "get his business straight." Defendant complains that the police officer described the effects of a lethal injection as causing great pain. Defendant further asserts that the police officer's references to defendant's mother having to visit his grave, and seeking forgiveness from God, also contributed to the coercive atmosphere in which he provided his inculpatory statement.
It is well settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. Additionally, the State must show that an accused making a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. Caples, 2005-2517, p. 8 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 153, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.
At the outset, we note that defendant was advised of his Miranda rights both orally and in writing. Defendant clearly acknowledges he understood those rights. Moreover, our review of the videotape indicates defendant was not under the influence of any substance, nor is there any obvious issue with his ability to understand the questions posed by Detective Moore. Rather, when faced with the mounting incriminating evidence against him, defendant chose to explain that he shot Cloy because he thought Cloy was reaching for a weapon following a dispute over a drug transaction.
Our review of the videotape confirms Detective Moore informed defendant he could get the death penalty for first degree murder, and referenced that defendant's mother would never see him if he were put to death, and that he spoke to defendant about the emotional weight of murder on one's conscience. However, our review of the videotape does not indicate that Detective Moore exercised any type of undue coercion that would render this confession involuntary. We note at no time during the two-hour interview did Detective Moore raise his voice toward defendant, nor did he strike defendant or threaten defendant with physical harm if he did not provide a statement. While Detective Moore described a lethal injection, it was in the context of such a result being one of the penalties for this crime. Several times during the interview, Detective Moore left the room in order to give defendant time to consider what he wanted to do in light of the evidence the police were developing against him.
Moreover, we do not find Detective Moore's references for defendant to consider the impact of his situation on his family, in particular, his mother, and defendant's religious beliefs, to have been improper. Throughout the duration of the interview, Detective Moore calmly emphasized that it would be in defendant's best interest to "get his business straight." Appeals to a defendant's emotions and/or religious beliefs typically do not render an ensuing confession involuntary. Additionally, courts have routinely held that mild exhortations to tell the truth, or a remark that if the defendant cooperates the officer will "do what he can" or "things will go easier," will not negate the voluntary nature of a confession. See State v. Blank, XXXX-XXXX, pp. 16-18 (La. 4/11/07), 955 So.2d 90, 108-09, cert, denied, ___ U.S. __, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
Accordingly, we cannot say that under the circumstances of this case, defendant's confession was not freely and voluntarily given. This assignment of error is without merit,
CONVICTION AND SENTENCE AFFIRMED.