# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-974

STATE OF LOUISIANA

VERSUS

MARK ANTHONY BROUSSARD

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 24832-12
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**AFFIRMED.**

Julie Christine Tizzard
Attorney at Law
700 Camp Street #101
New Orleans, LA 70130
(504) 529-3774
COUNSEL FOR DEFENDANT- APPELLANT:
    Mark Anthony Broussard

John Foster DeRosier
District Attorney, Fourteenth Judicial District Court
Elizabeth Brooks Hollins
Karen C. McLellan
Jacob L. Johnson
Cynthia Killingsworth
Carla S. Sigler
Assistant District Attorneys
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
    State of Louisiana

**PICKETT, Judge.**

## FACTS

Between July 1, 1986, and September 6, 1988, the defendant, Mark Anthony Broussard, who was a priest in Lake Charles, Louisiana, had anal sexual intercourse with one of the altar boys in the church. The victim, J.A., was between eleven and twelve years old when the offenses occurred.[1]

Between September 6, 1988, and July 1, 1991, the defendant fondled the genitals of L.N., who was an altar boy. The defendant performed oral sexual acts on the victim and caused the victim to perform oral sexual acts. The defendant also had anal intercourse with L.N. The victim was between ten and thirteen years old when the offenses were committed.

The defendant was indicted on August 9, 2012, with two counts of aggravated rape, violations of La.R.S. 14:42, molestation of a juvenile, a violation of La.R.S. 14:81.2, aggravated oral sexual battery, a violation of La.R.S. 14:43.4, and oral sexual battery, a violation of La.R.S. 14:43.3.[2]

On January 8, 2013, the defendant filed a "Motion to Suppress Statement." A hearing on the motion was held on April 24, 2013. The trial court took the motion under advisement. On May 1, 2013, the trial court denied the defendant's motion to suppress in open court with reasons.

---

[1]Pursuant to La.R.S. 46:1844(W), the initials of the victims are used to protect their identities.

[2]Pursuant to 2015 La. Acts No. 184, § 1 and 2015 La. Acts No. 256, § 1, effective August 1, 2015, aggravated rape is now designated as first degree rape. Moreover, La.R.S. 14:43.4, aggravated oral sexual battery, was repealed by 2001 La. Acts No. 301, § 2. The offense was subsumed under the aggravated rape statute, effective August 15, 2001.

On March 7, 2013, the state filed a "Notice of Intent to Introduce Evidence of Similar Crimes, Wrongs, or Acts." On September 16, 2015, the state filed a "Supplement Notice of Intent to Introduce Evidence of Similar Crimes, Wrongs, or Acts." On September 13, 2013, the defendant filed a "Motion in Limine" in response to the state's filing of the notice of intent to introduce similar crimes, wrongs, or acts at trial, seeking to include that evidence. In response to the the defendant's motion *in limine*, the state filed "State's Response to the Defendant's Motion for Pretrial Disclosure of Evidence of Independent and Separate Offenses, Wrongs, or Acts and Pretrial Hearing," and "State's Response to the Defendant's Motion *in Limine*." On June 25, 2015, the trial court denied the defendant's motion *in limine* in open court.

On September 13, 2013, the defendant also filed a "Motion to Redact Videotaped Statement and to Prohibit Introduction of or Reference to Crime not Subject to Indictment." The state filed "State's Response to Defense Redactions to Statement of the Accused." On January 25, 2016, the morning trial commenced, the defendant, the state, and the trial court addressed the defendant's motion to redact. During the proceeding, the defendant objected to several of the trial court's refusals to redact certain portions of the defendant's videotaped statement to the police.

Trial commenced on January 25, 2016, and on February 5, 2016, the defendant was found guilty as charged. The defendant was sentenced on March 11, 2016, to two life sentences at hard labor, without the possibility of parole, probation, or suspension of sentence on the convictions for aggravated rape; fifteen years at hard labor on the conviction for molestation of a juvenile; fifteen years at hard labor on the conviction for oral sexual battery; and twenty-five years on the

2

conviction of aggravated oral sexual battery. All the sentences were ordered to be served consecutively, with credit for time served.

The defendant filed a "Motion to Reconsider Sentence" on April 8, 2016. The motion to reconsider the sentence was denied without a hearing.

## ASSIGNMENTS OF ERROR

The defendant has perfected a timely appeal, wherein he alleges four assignments of error:

1. The court erred when it denied a challenge for cause of a prospective juror.

2. The court erred when it denied the motion to suppress based on Defendant's invocation of right to counsel.

3. The court erred when it denied Defendant's motion *in limine* to exclude other crimes evidence under La.Code Evid. art. 404(B) in purview of La.Code Evid. art. 412.2, more particularly, evidence of the previously quashed counts.

4. The court erred when it denied, in part, Defendant's motion to redact the transcription of the videotaped statement and to prohibit the introduction of or reference to crimes not subject to indictment.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NUMBER ONE

The defendant asserts that the trial court erred when it denied his challenge for cause of a potential juror who had revealed that she was raped as a child by two uncles. The defendant argues that although the prospective juror indicated that she could remain impartial, her responses during *voir dire* showed bias, prejudice, or inability to render a judgment according to the law.

In *State v. Lewis,* 12-1021, pp. 9-11 (La. 3/19/13), 112 So.3d 796, 801-02 (footnote omitted), the supreme court stated:

> The peremptory challenge occupies an important role in the jury selection process. By enabling each side to exclude those jurors it perceives as harboring subtle biases with regard to the case which were not elicited on voir dire or which do not establish legal cause for a challenge, peremptory challenges are a means of " 'eliminat[ing] extremes of partiality on both sides,'. . .thereby 'assuring the selection of a qualified and unbiased jury.' " *Holland v. Illinois*, 493 U.S. 474, 484, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), *quoting Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and *Batson v. Kentucky,* 476 U.S. 79, 91, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). While peremptory challenges are one means of assuring the selection of a qualified and unbiased jury, the U.S. Supreme Court has determined that an erroneous ruling denying a peremptory challenge is not, as a matter of federal constitutional law, a structural error requiring automatic reversal of a defendant's conviction. *Rivera v. Illinois*, 556 U.S. 148, 160-61, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). Rather, state law determines the consequences when a peremptory challenge is erroneously denied. *Id.* at 161-62, 129 S.Ct. 1446. As the Court explained in *Rivera*, "[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern . . . [but] a matter for the State to address under its own laws." *Id.*

> In Louisiana, the peremptory challenge is protected by and preserved in the constitution. La. Const. art. I, § 17 ("The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law"). While the exercise of a peremptory challenge is provided through legislation, La.C.Cr.P. arts. 795, 799, and 799.1, it is not merely a statutory right. Thus, this court has long recognized that when a defendant is forced to utilize a peremptory challenge to correct a district court's error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana constitution, is affected. *State v. Monroe*, 366 So.2d 1345, 1347 (La.1978). In such instances, prejudice is presumed. *Id.*; *State v. Juniors,* 2003-2425, p. 8 (La.6/29/05), 915 So.2d 291, 305.

Louisiana jurisprudence holds that trial courts have wide discretion in determining whether to reject a juror for cause, and those determinations cannot be disturbed absent an abuse of discretion. *State v. Jones*, 474 So.2d 919 (La.1985),

*cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906 (1986). A review of the record indicates that the defendant used all twelve of his peremptory challenges prior to the full complement of the jury. La.Code Crim.P. art. 799.1. Accordingly, if the challenge for cause was wrongfully denied in the current case, prejudice is presumed. *See State v. Blank*, 04-204 (La. 4/11/07), 955 So.2d 90, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494 (2007).

In a third circuit case, *State v. Hamilton,* 12-204, pp. 4-5 (La.App. 3 Cir. 11/20/13), 127 So.3d 76, 79-80, *writ denied,* 13-2925 (La. 5/30/14), 140 So.3d 1173, this court discussed issues of a trial court's denial of challenges for cause, as follows:

> A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the trial judge abused its discretion….
>
> "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate "(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges." In the instant case, it is undisputed that defense counsel exhausted his peremptory challenges, and, therefore, need only show that the trial court abused its discretion by denying a challenge for cause.

> *State v. Odenbaugh,* 10-268, pp. 23-25 (La.12/6/11), 82 So.3d 215, 236-37, *cert. denied*, — U.S. — , 133 S.Ct. 410, 184 L.Ed.2d 51 (2012) (citations omitted).

According to La.Code Crim.P. art. 797, the State or Defendant may challenge a prospective juror for cause on the ground that:

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
>
> (4) The juror will not accept the law as given to him by the court.

In *Odenbaugh*, 82 So.3d at 238 (citations omitted), the supreme court further stated:

> [W]hile cognizant of the broad discretion afforded a district court when ruling on cause challenges, this Court has cautioned that a prospective juror's responses cannot be considered in isolation and that a challenge should be granted, "even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably [inferred]."

Following the state's *voir dire* of the prospective juror, the defense revealed that on the prospective juror's jury questionnaire, A.D.[3] stated that she had been raped by two of her uncles when she was a child. In brief, the defendant argues that her responses given during *voir dire* indicated that she was angry "over her perceived lack of justice that occurred when two uncles that purportedly raped her over a number of years were not prosecuted."

---

[3] Because this venireman is a victim of a sexual assault, we will identify her only by initials.

The state, defense counsel, and the trial court questioned the juror away from the jury pool. The juror explained that both she and her sister were raped by two of their uncles. She stated that the sexual abuse stopped when she and her sister complained to their mother. Even though a complaint was filed and the two sisters' statements were taken, one uncle, as soon as he was told of the accusations, fled the state. She explained that her sister then refused to concur with the accusation against the second uncle, and the matter was dropped. The prospective juror told the trial court she received extensive counseling that lasted for several years. She insisted that she had moved on; she was married, had two children, and worked full time. While she said she was mad back then, "but now it's - - it's been so long ago."

Defense counsel questioned Ms. [A.D.], as follows:

MR. T. LORENZI: Ms. [A.D.], if you were in my position knowing that I represent Mr. Broussard and knowing what he's charged with, you've been here now for three and a half days - -

MS. A.D.: Uh-huh.

MR. T. LORENZI: - - would you be concerned to have you on this jury?

MS. [A.D.]: I feel like with the way that I feel I don't think so.

MR. T. LORENZI: Okay. And why? If you were me what would I tell Mr. Broussard about why I should select you or how do I convince him that you would be a fair, open-minded juror knowing your background?

MS. [A.D.]: Because I understand that my situation is different. I was there.

MR. T. LORENZI: Well, you haven't heard any evidence in this case now.

MS. [A.D.]: No, I haven't, but - -

. . . .

7

MR. T. LORENZI: Okay. Now, if you were chosen in this case and you heard evidence that had some familiarity to some aspect of your personal experience would that change your opinion?

MS. [A.D.]: No.

    . . . .

MR. T. LORENZI: Okay. Have you ever attempted to pursue a financial recovery against either of those two men?

MS. [A.D.]: No.

MR. T. LORENZI: Why not?

MS. [A.D.]: I don't know that it's necessary.

    . . . .

MR. T. LORENZI: At any point during your time in the courtroom since this process began did you ever consider asking to meet with the Court to discuss your situation, your past, because you had doubts or you had questions as to whether you could be a fair juror?

MS. [A.D.]: No.

    . . . .

MR. T. LORENZI: If as a result of the discussions that we've had here today you are approached and it's discussed that you could pursue either or both of these uncles for prosecution, would you intend to do so?

MS. [A.D.]: Yes.

MR. T. LORENZI: If you sit on this jury and there's discussions regarding the law and what laws are applicable are you going to be thinking about how this applies to your personal situation?

MS. [A.D.]: No.

MR. T. LORENZI: Why not?

MS. [A.D.]: Because this case has - - it's not about me, has nothing to do with me.

When the time came to select or reject A.D. as a juror, defense counsel stated:

> Then we would challenge for cause number 74, [A.D.]. Ms. [A.D.], we admit, said everything that - - despite her having been raped by two uncles that nothing would affect her. She presented herself as Superman or Superwoman and it is simply bordering on impossible to believe that a two-time victim in circumstances too close factually to the allegations that would be introduced in this case, understanding that she has not heard the evidence in this case, would not so closely identify with both victims of the charged cases and the charges and the other-crimes evidence in this case and it would not be prejudicial to Mr. Broussard and so even though she's saying at this time that she would be fair to Mr. Broussard it is impossible to believe that that would be able to be maintained through the course of the trial and on that basis we challenge her for cause.

The trial court denied the defendant's challenge, stating:

> Well, let me just say this. I mean I listened carefully to her testimony - - I mean to when we talked to her privately. In response to your questioning she said she was willing to have that discussion in front of everybody here, you know. She obviously has handled that situation with the help of counseling well and I mean she seems to be a strong person. She didn't cry, you know, during the questioning. I mean she, you know, understands that that's a different situation than this situation and frankly I would have to believe that she lied to us and I don't believe she did. I mean I believe she's obviously - - you know, everybody handles that type of stuff differently and some people let it ruin their lives and some people rise about it and I think she's been able to - - it doesn't affect her in some way, but I have to take her at her word because I don't think she was trying to mislead us. I felt like she was telling us she felt like she could do it and so anyway I'm going to deny that challenge for cause because I think everything she said - -  I accept what she said as being truthful and that she can separate them.

We agree with the trial court. There was nothing in the prospective juror's responses to defense counsel's questioning to indicate that she harbored anger against her violators that would have affected her ability to judge the evidence in the current case impartially. In addition, the trial court had the opportunity to observe her demeanor when she answered counsel's questions, which is not insignificant.

We cannot say that the trial court abused its discretion when it denied the defendant's challenge for cause to exclude A.D. from the jury in this case. There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

In his motion to suppress, the defendant argued that the police illegally continued their interrogation after he had invoked his right to counsel. He asserts the trial court should have granted his motion to suppress the videotaped statements he made during the interrogation because of the violation of his constitutional right to have counsel present upon request.

In brief, the defendant contends that during the interrogation he stated "unequivocally, 'I really would like, I mean I think I want a lawyer. Because, I mean this is not right.'"

> In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the Fifth Amendment gives a suspect subject to custodial interrogation the right to consult with an attorney during questioning. *State v. Payne*, 01-3196 (La.12/4/02), 833 So.2d 927, 934; *Miranda v. Arizona*, 384 U.S. at 469-473, 86 S.Ct. at 1625-1627. The police are required to explain this right to the suspect before the custodial interrogation, "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," begins. *State v. Payne, supra* at 934, *citing Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), quoting *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1619. The safeguards regarding the Miranda right to counsel are triggered by both a custodial setting and official interrogation. *State v. Payne, supra* at 934.

> After a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning a suspect unless or until he clearly requests an attorney. *Davis v. United States,* 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994). Whether the accused actually invoked his right to counsel is an objective inquiry. *State v. Payne*, 833 So.2d at 935, *citing Davis v. United States*, 512 U.S. at 458-459, 114 S.Ct. at 2355. In order to invoke his right to counsel, the suspect must articulate his desire to have counsel present with sufficient clarity to enable a reasonable

police officer, in the circumstances, to understand his statement to be a request for an attorney. *Id. See also, State v. Leger*, 05-0011 (La.7/10/06), 936 So.2d 108, 135. The invocation of the right to counsel during the custodial interrogation "requires, at minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *State v. Payne*, 833 So.2d at 935, *quoting Davis v. United States*, 512 U.S. at 459, 114 S.Ct. at 2355.

Once a suspect has asked to have an attorney present, he is not subject to any further interrogation by the authorities until counsel has been made available to him, unless the suspect initiates further communication, exchanges or conversations with the police. *State v. Payne*, 833 So.2d at 935, citing *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). A cessation of questioning is not required, if the suspect makes a reference to an attorney that is ambiguous or equivocal, which causes a reasonable police officer, in light of the circumstances, to understand only that the suspect *might* be invoking the right to counsel. *State v. Payne,* supra at 935, *citing Davis v. United States*, 512 U.S. at 458, 114 S.Ct. at 2355. (emphasis in original).

In analyzing whether there has been a direct, clear, unequivocal, and unambiguous request for counsel, courts must give a broad, rather than narrow, interpretation to the suspect's request. *State v. Payne,* 833 So.2d at 936, *citing Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The admissibility of a confession or statement is a determination for the trial court and the trial court's ruling will not be overturned unless the preponderance of the evidence clearly favors suppression. *State v. Gant*, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1123.

*State v. Allen*, 06-778, pp. 4-6 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 747-48,

*writ denie*d, 08-2432 (La. 1/30/09), 999 So.2d 754 (footnote omitted).

At the suppression hearing, Detective Elizabeth Zaunbrecher, a supervisor in

the sex crimes division of the Calcasieu Parish Sheriff's Office, testified that she

assisted Detective Catherine LeBlanc, also with the sex crimes division, with the

interview of the defendant. Detective Zaunbrecher stated that the defendant

voluntarily went to the police department for the interview. At the time, he was not

under arrest. The defendant was given his *Miranda* warnings. The defendant then

gave a statement. Towards the end of the statement, he asked for an attorney, and the interview was concluded pursuant to his request.

Detective Zaunbrecher stated that approximately ten minutes into the recorded interview, the defendant was given a written statement made by the victim, L.N. After he read the statement, "[h]e stated that he may - - maybe, I think, need an attorney. He then just continued to talk."

When asked why she did not believe the defendant had invoked his right to counsel right then, Detective Zaunbrecher answered:

> A The defendant continued to talk. I tried saying something. He interrupted me, he continued to talk. I didn't get the impression from him - - he did not say I want an attorney.
>
> Q Okay, now - -
>
> A Those were not the words he used. When he did use those words, you say, it is absolutely his right to invoke it and to want an attorney, and the interview was stopped.
>
> Q There is a Fifth Amendment right to silence. There is a Sixth Amendment right to a lawyer. When he said, "I mean I want a lawyer because I mean this not right," did you not feel that it was incumbent upon you at that time to say, Mr. Broussard, I need to clarify something. Do you want a lawyer or not?
>
> A I'm - -
>
> Q Before I can go any further I need to make sure. Are you telling me you want a lawyer or that you're thinking about wanting a lawyer?
>
> A He did not stop talking.
>
> Q What he was saying is this isn't right. What he continued to do was to answer your questions, correct?
>
> A No sir. After he said I may need - -  maybe - - I think I need an attorney, he continued to talk. I wasn't asking him anything.

Detective LeBlanc's testimony corroborated Detective Zaunbrecher's testimony regarding whether it appeared to the detectives that the defendant had made an unequivocal request for counsel.

Following brief arguments by the defendant and the state, the trial court stated it wanted to review the videotaped interrogation again and would rule thereafter. On May 1, 2013, the trial court denied the defendant's motion to suppress in open court, as follows:

> Now, going to the video or to the statement or the reference to an attorney by Mr. Broussard, and I thought about it, as I said a while ago, I thought about queuing that up and just kind of letting everybody hear it again, but I mean I think y'all have copies of that and if you want to go through that I don't mind doing it, but when I was watching that video again it was after Detective Zaunbrecher gave the statement, the victim's statement, I guess that's what that was as I recall, or the report, something containing what the victim said, whether it was the direct statement of the victim or whether it was a report where somebody was - - had written down what the - - it was either first or third hand information, first or second hand information, that was in that report that Mr. Broussard was reading. I don't recall what that was for sure, other than whatever the allegations were against him as I understand it were in what he was reading. Detectives [sic] Zaunbrecher had exited the room and came back and when Mr. Broussard finished reading the statement with Detective Zaunbrecher back in the room and he said, "I really - - I really would like - - I think I want a lawyer on - -" and then he says, "This is not right," and then, because this is in a conversational way, you know, in the way he was talking, then he said, and I actually missed this the first or second time that 1 listened to it and then as I listened to it a few times, this next statement, right after that he said, "Well, I don't - -" It was like he had a - - he was having different thoughts there and then after he says, you know, "This is not right," and then he says, "Well, I don't - - " and then he continued on to say - - he interrupted himself and said, "I think I - - I think I mentioned to you over the phone that I don't want court cases to hurt families," and then he - - so he makes those comments without Detective Zaunbrecher saying anything to him. He says, "I really -- I really would like -- I think I want a lawyer on," and then I think he paused and he says, "This is not right," and then he says, "Well, I don't - -" and then he didn't finish that statement. He says, "Well, I don't - -" and then he says, "I think I mentioned to you over the phone that I don't want court cases to hurt families," and then - - and I think he may have said something else, and then Detective Zaunbrecher said, "Well," you know, and then she followed along

with the conversation after he made that comment to her. So that in and of itself, I cannot say that that is an unequivocal invocation of right to counsel to say, "I really would like - - I think I want a lawyer on - - this is not right," and then he says, "Well, I don't - -" and then he went on to make another comment directed to Detective Zaunbrecher saying, "I think I mentioned to you over the phone that I don't want court cases to hurt families."

And so he initiated the - - I mean he continued on with the conversation. I mean it was almost as if he was, you know, just thinking out loud when he made his first comments. Yeah, I think I want a lawyer, and then this is not right, as opposed to saying I want a lawyer, especially when he says - - like I said, it was pretty subtle, but then he says, "Well, I don't - -" at a minimum that made it - - if it wasn't equivocal before he said that then certainly it was after he said that or he started to say whatever he said. He said, "Well, I don't - -" and then I don't know what he was going to say when he interrupted himself or shifted gears after he said, "Well, I don't - -" and then he went on to say, "I think I mentioned to you on the phone that I didn't want court cases to hurt families." So he continued on with the conversation, as Detective Zaunbrecher testified, and I believe as Detective LeBlanc testified that Mr. Broussard continued on talking, and then at the end when Mr. Broussard indicated that he had a right to - - said he wanted an attorney and Detective Zaunbrecher stopped the questioning, he said - - I think they had just had a bathroom break for a couple of minutes and then they came back on the record and Mr. Broussard said, "I said earlier that I felt like maybe I need a lawyer," and he said, I said earlier that I felt like maybe I need a lawyer. Okay. This is pretty damn serious," and then Detective Zaunbrecher went on to say yes, this is serious and she went ahead and said, "Okay. Well, we're going to stop the interview," and acknowledged his concern.

Anyway. So even at the end he was saying earlier that he felt like maybe - - I mean he's telling Detective Zaunbrecher that I said earlier that I felt like maybe I need a lawyer, and I think he's acknowledging at the end that it was - - his earlier mentioning of an attorney was not unequivocal, but that it was equivocal and he was making it unequivocal at the end of the interview. So I think looking at that as a whole -- well, I think looking at it either in isolation and as a whole I think it's unequivocal - - I think it's equivocal and I think that under the cases cited by the State, and I'll just mention the *Davis* case, *Davis versus United States*. That's a United States Supreme Court case, as well as the other cases mentioned, there needs to be more and even in that case, the *Davis* case, it says, "About an hour and a half into the interview he said," the defendant in that case said, "Maybe I should talk to a lawyer." Of course - - and then the Supreme Court discusses in the various cases that were cited that there

14

needs to be an unequivocal request and I don't find that this was an unequivocal indication of his, Mr. Broussard's, right to counsel.

So for the reason that I probably very unartfully gave, I am going to deny the Motion to Suppress.

The case referred to above by the trial court was *Davis*, 512 U.S. 452, 462, wherein the defendant, during interrogation, stated that "[m]aybe I should talk to a lawyer." The United States Supreme Court did not find that the statement was an unequivocal and unambiguous statement such that would require the interrogating officers to terminate the interview. Similarly, in *Allen*, 955 So.2d 742, after the defendant was advised he had the right to counsel during interrogation, he told the officers that he might want to speak with an attorney but wanted to think about it. He was given a cigarette and a drink and left alone to ponder. When asked if he was ready to give a statement, the defendant stated he was. Again he was *Mirandized* before he confessed to the offense. The officer then asked him to make a recorded statement. Once again, the defendant said he needed to think about it and asked for food. He was given lunch, another cigarette break, and then he confessed on tape. After he was charged, the defendant filed a motion to suppress his statements claiming that he had twice asked for counsel but was ignored. The fifth circuit found that the trial court did not err when it denied the defendant's motion to suppress the statements. Citing a case from this court, the fifth circuit stated:

> Additionally, in *State v. Chesson*, 03-606 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 173-175, *writ denied*, 03-2913 (La.2/13/04), 867 So.2d 686, the Third Circuit upheld the trial court's denial of the defendant's motion to suppress his statement despite his statement to police officers while being transported that "he might--he felt like he should talk to an attorney." The Third Circuit concluded that "[t]he defendant's statement regarding his 'thinking' that he possibly 'should' speak with an attorney is not the type of unequivocal and unambiguous statement described above [in *Davis*]."

15

Similar to *State v. Chesson, supra*, the defendant in the present case twice stated he was "thinking" he "might" want an attorney. According to Detective Becnel, who the trial court found credible, the defendant never unequivocally stated he wanted an attorney. Under Davis, the defendant's statements that he thought he might want to speak to an attorney were ambiguous and cessation of questioning was not required.

*Id*. at 749-50 (footnote omitted).

Finally, in *State v. Leger,* 05-11, pp. 31-32 (La. 7/10/06), 936 So.2d 108, 135, *cert. denied,* 549 U.S. 1221, 127 S.Ct. 1279 (2007), the supreme court did not find that the statement, "I know I need to see one [a lawyer]" amounted "to an unambiguous request for counsel that would indicate to a reasonable police officer that the defendant was asking for counsel at that time."

Considering, as noted above in *Allen*, 955 So.2d at 748 (citing *Payne,* 833 So.2d at 936, and *Jackson*, 475 U.S. 625 (1986)) that the "courts must give a broad, rather than narrow, interpretation to the suspect's request[,]" we cannot say that the trial court erred in the current case when it found that the defendant's statement that he thought he wanted a lawyer was an unequivocal indication such that required the detectives to terminate the interview. The trial court did not err when it denied the defendant's motion to suppress his videotaped statements.

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER THREE

The defendant asserts that the trial court erred when it permitted the state to introduce other crimes evidence at trial. The defendant argues that the "issue is whether the State has 'established an independent and relevant reason' to admit as required [] such evidence under La.C.E. Article 404(B) or that these alleged 'other

16

crimes' are admissible pursuant to the La.C.E. Article 403 'balancing' test that is required by La.C.E. Article 412.2."

However, except for extensively quoting the jurisprudence and Louisiana's evidentiary statutes regarding "other crimes" evidence, the defendant does not state what specific other crimes evidence he objects to, and where in the record this other crimes evidence was introduced at trial. There is no discussion as to why such evidence was more prejudicial to the defendant than probative. The Uniform Rules—Courts of Appeal, Rule 2-12.4(B), in pertinent part, provides:

> (3) The court may disregard the argument on an assignment of error or issue for review if suitable reference to the specific page numbers of the record is not made.

> (4) All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed.

A general discussion of the law without specifically defining what testimony the trial court allegedly erred by admitting is not sufficient for review purposes.

## ASSIGNMENT OF ERROR NUMBER FOUR

The defendant filed a "Motion to Redact Videotaped Statement and to Prohibit Introduction of, or Reference to Crimes not Subject to Indictment." The motion was addressed on January 25, 2016, prior to picking the jury. The defendant argues that the trial court erred when it refused to grant a majority of his requested redactions regarding other crimes evidence from a transcript of the interview he gave to detectives on March 22, 2012.

The videotaped interview was then redacted as ordered by the trial court and presented to the jury.

In brief, the defendant argues:

17

This issue is whether under the balancing test in *State v. Rose*, 949 So.2d 1236 (La. 2/22/07) in purview of LSA-C.E. art. 403, it is unduly prejudicial. More particularly, whether the introduction of the prior misconduct "speaks to the capacity of some relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *See State v. Wright*, 2011-0414 (La. 12/6/11), 79 So.3d 309, 318.

Louisiana Code of Evidence Article 404(B) provides in pertinent part that "as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, La.Code Evid. art. 412.2, **Evidence of similar crimes, wrongs, or acts in sex offenses cases**, provides:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

The balancing test provided by La.Code Evid. art. 403 is: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

In *State v. Henry*, 11-1137, pp. 8-9 (La.App. 4 Cir. 10/24/12), 102 So.3d 1016, 1021-22, *writ denied*, 12-2520 (La. 4/26/13), 112 So.3d 838 (footnote omitted), the fourth circuit discussed *State v. Rose*, 06-402 (La. 2/22/07), 949 So.2d 1236, regarding prejudicial as opposed to the probative value of the balancing test of La.Code Evid. art. 403, as follows:

> Addressing the meaning of the "unfair prejudice" component of the balancing test, the Louisiana Supreme Court in *State v. Rose*, 06-0402, p. 13 (La.2/22/07), 949 So.2d 1236, 1244, noted that "[a]ny inculpatory evidence is 'prejudicial' to a defendant, especially when it

is 'probative' to a high degree." *Id.* (citing *State v. Germain*, 433 So.2d 110, 118 (La.1983)). The Supreme Court further noted that "[a]s used in the balancing test, 'prejudicial' limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial." *Id.* In this context, unfair prejudice thus means "the offered evidence has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " George Pugh, Robert Force, Gerard Rault, & Kerry Triche, HANDBOOK ON LOUISIANA EVIDENCE LAW, Author's Note (3), La. C.E. art. 403, p. 380 (2011) (citing the Advisory Committee's Note to Federal Rule 403). A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. *State v. White*, 09-0025, p. 9 (La.App. 4 Cir. 9/16/09), 22 So.3d 197, 204.

In the current case, the defendant requested thirty-nine redactions. Several of the requested redactions concerned references the defendant made during the interrogation to the two victims listed in the indictment who testified at trial, L.N. and J.A. The trial court denied the defendant's request to redact these references. The trial court did not err when it denied these requested redactions since the two victims' testimonies were not other crimes evidence.

The remaining requested redactions can be grouped into four categories. One category is comments made by the defendant regarding his own anguished mental and emotional reactions to his behavior but not mentioning other victims. The trial court denied the defendant's request to redact these comments made by the defendant. The second category was references made by the defendant to a victim, M.C., who testified at trial but was not listed in the indictment. The trial court denied the defendant's requests to redact references to M.C. The trial court redacted opinion comments made by the detectives during the interrogation. Finally, the trial court granted the defendant's request to redact all references to any other victims disclosed during the interrogation.

We note that in the defendant's motion to redact, the only objection was to crimes that were not subject to the indictment. Furthermore, at the hearing on the

19

motion to redact, while defense counsel objected when the trial court denied his

requests to redact, defense counsel never stated a ground for the objection. Nor in

brief to this court does the defendant argue why each requested redaction was more

prejudicial to his case than probative. In *Henry*, 102 S.3d at 1022, the defendant

sought to suppress introduction of a thirty-year-old sexual assault, noting that the

evidence was "'so stale as to have greatly diminished any probative value it may

have originally provided.'" The fourth circuit noted:

> [Defendant] emphasizes that he was only sixteen years old - - a child
> himself - - at the time of the prior crime. He thus submits that the
> prior crime was a criminal sexual act committed by one child against
> another, and did not, thirty years thereafter, serve to indicate his
> lustful disposition toward children. The State counters that Mr. Henry
> erred in focusing his argument solely on the "lustful disposition
> toward children" aspect of La. C.E. art. 412.2. The State points out
> that La. C.E. art. 412.2 also provides that "evidence of the accused's
> commission of another crime, wrong, or act involving sexually
> assaultive behavior . . . may be considered for its bearing on any
> matter to which it is relevant subject to the balancing test provided in
> Article 403." The State argues that Mr. Henry failed to establish
> prejudice based on either the remoteness in time or his youth at the
> time of the prior offense.

*Id.*

In *State v. E.J.F.*, 08-674 (La.App. 3 Cir. 12/10/08), 999 So.2d 224, the

defendant was charged with aggravated incest. He sought to suppress a prior

federal conviction for possession of child pornography. This court found that there

was no merit to the defendant's allegation that the trial court erred when it denied

his motion to suppress, stating:

> The defendant insisted that the application of La.Code Evid. art.
> 412.2 is discretionary and that using it to admit the depictions of child
> pornography in this case violated his due process rights, particularly
> because child pornography is not an integral part of aggravated incest.
> Alternatively, the State contended that La.Code Evid. art. 412.2
> expands the admissibility of evidence under La.Code Evid. art. 404(B)
> when the offense is sexual in nature and is perpetuated against a
> victim under the age of seventeen. The trial court agreed with the

State, finding the evidence admissible, insomuch as it proved a lustful disposition toward children.

In a recent case involving the forcible rape trial of a fourteen-year-old girl, the State offered evidence of another crime, sexual battery, also committed on a fourteen-year-old girl, who testified that she had been sexually assaulted by the defendant. *State v. Mayeux*, 06-944 (La.App. 3 Cir. 1/10/07), 949 So.2d 520. An eyewitness to the offense also testified at trial regarding the sexual assault. The defendant argued that admission of the testimony was prohibited by La.Code Evid. art. 404(B)(1), that the crimes' sexual natures were dissimilar and that the introduction of the evidence of the sexual battery would be unduly prejudicial. The trial court ruled that the evidence was admissible pursuant to La.Code Evid. Art 412.2, because the testimony of the sexual battery showed a lustful disposition toward young teenage girls and that the probative value of the evidence outweighed the prejudicial effect of the defendant's case. The trial court's ruling was affirmed on appeal. This court stated, "[w]hile one incident involved rape and one incident involved oral sexual contact, in both cases, Defendant sought out fourteen-year-old girls, who were guests in his home, late at night after they fell asleep." *Id*. at 529.

Based on the language of La.Code Evid. art. 412.2 and the jurisprudence applying the article, we find that the trial court did not commit error when it allowed evidence of the defendant's federal conviction for possession of child pornography to be admitted. Because the defendant was charged with sexual misconduct against a victim who was under the age of seventeen, the defendant's conviction relating to the possession of pornographic images of children is relevant for the purposes of revealing his lustful disposition toward young girls.

We note, too, that the defendant has not produced evidence of how the probative value of the defendant's federal conviction is outweighed by any prejudicial effect of the evidence.

*Id.* at 230-231.

In both of the above cases, the defendants articulated why the evidence the prosecution sought to present at the trials was unduly prejudicial. In one case, the evidence was thirty years old and therefore not applicable to the offense charged, and in the other case, the evidence was not substantially similar to the offense.

21

In the matter before us now, it is not sufficient to simply assert that the evidence was unduly prejudicial without showing in what manner the evidence lured the jury into declaring guilt on a ground different from proof specific to the offenses charged. Furthermore, in *E.J.F.* the evidence the defendant sought to suppress was not listed in the indictment, yet this court permitted the evidence to be submitted to the jury. The defendant in this case has not shown how the probative value of the allowed evidence was outweighed by the prejudicial effect of the evidence. Accordingly, there is no merit to this assignment of error.

## CONCLUSION

The defendant's convictions are affirmed.

**AFFIRMED.**