# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-372

**STATE OF LOUISIANA**

**VERSUS**

**SAMUEL ANDERSON**

**A/K/A SAMUEL BRENT ANDERSON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 101313-FB
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED IN PART AND VACATED IN PART.**

**Trent Brignac**
**District Attorney, Thirteenth Judicial District Court**
**Julhelene E. Jackson**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, Louisiana  70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**329 Southfield Road**
**Post Office Box 52988**
**Shreveport, Louisiana  71135**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Samuel Anderson A/K/A Samuel Brent Anderson**

**Samuel Anderson**
**Louisiana State Prison**
**CBD 4/R 4**
**Angola, Louisiana  70712**

**SAVOIE, Judge.**

On January 28, 2015, a grand jury indicted Defendant Samuel Brent Anderson for first degree murder, a violation of La.R.S.14:30, and armed robbery, a violation of La.R.S. 14:64. After various pretrial motions and hearings, the parties selected a jury on March 28, 2016. The jury heard evidence and argument on March 29 through April 1 and ultimately found Defendant guilty as charged on both counts. On July 28, the trial court sentenced Defendant to serve life in prison for the first degree murder conviction, with a consecutive fifty-year term for the armed robbery conviction.

Defendant now appeals his convictions and sentences, assigning three errors. For the foregoing reasons, we affirm Defendant's murder conviction and vacate his armed robbery conviction.

## FACTS

On July 28, 2014, Defendant was armed with a gun when he entered a store in Evangeline Parish, seeking to commit an armed robbery. In the course of the robbery, he shot proprietor Ann Nguyen, killing her.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors present.

## ASSIGNMENT OF ERROR NUMBER THREE

We will first discuss assignment of error number three. Defendant argues that his convictions for both first degree murder and armed robbery violate the constitutional protection against double jeopardy, as the robbery was the act that elevated the homicide to first degree murder.

This court has stated:

> A person cannot twice be placed in jeopardy for the same offense. U.S. Const. amend. V; La. Const. art. I, § 15. The defendant argues, and the state acknowledges, that it is well-settled that convictions for both a felony murder and the underlying felony violate double jeopardy

protections.  *See State v. Marshall*, 81-3115, 94-461 (La.9/5/95), 660 So.2d 819.

*State v. Lafleur* 12-1383, p. 2 (La.App. 3 Cir. 6/5/13), 114 So.3d 666, 668 (footnote omitted).  As the *Lafleur* court noted, the remedy is vacation of the less severely punishable offense. *Id.*

In brief, the State acknowledges the violation and agrees with the remedy. Accordingly, the conviction and sentence for armed robbery is vacated.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues that the trial court erred by denying his motion to suppress his confession.  He alleges that he was questioned after he invoked his right to counsel.  An assertion of the right to counsel must be "clear and unequivocal." *State v. Payne*, 01-3196, p. 13 (La. 12/4/02), 833 So.2d 927, 937.

This court has explained in a previous case:

> In brief, the defendant contends that during the interrogation he stated "unequivocally, 'I really would like, I mean I think I want a lawyer. Because, I mean this is not right.' "
>
> In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the Fifth Amendment gives a suspect subject to custodial interrogation the right to consult with an attorney during questioning. *State v. Payne*, 01-3196 (La. 12/4/02), 833 So.2d 927, 934; *Miranda v. Arizona*, 384 U.S. at 469-473, 86 S.Ct. at 1625-1627. The police are required to explain this right to the suspect before the custodial interrogation, "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," begins. *State v. Payne, supra* at 934, *citing Rhode Island v. Innis*, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), quoting *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1619. The safeguards regarding the *Miranda* right to counsel are triggered by both a custodial setting and official interrogation. *State v. Payne, supra* at 934.
>
> After a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning a suspect unless or until he clearly requests an attorney. *Davis v. United States*, 512 U.S. 452, 461, 114 S.Ct. 2350, 2356,

2

129 L.Ed.2d 362 (1994). Whether the accused actually invoked his right to counsel is an objective inquiry. *State v. Payne*, 833 So.2d at 935, citing *Davis v. United States*, 512 U.S. at 458-459, 114 S.Ct. at 2355. In order to invoke his right to counsel, the suspect must articulate his desire to have counsel present with sufficient clarity to enable a reasonable police officer, in the circumstances, to understand his statement to be a request for an attorney. *Id. See also, State v. Leger*, 05-0011 (La. 7/10/06), 936 So.2d 108, 135. The invocation of the right to counsel during the custodial interrogation "requires, at minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *State v. Payne*, 833 So.2d at 935, *quoting Davis v. United States*, 512 U.S. at 459, 114 S.Ct. at 2355.

Once a suspect has asked to have an attorney present, he is not subject to any further interrogation by the authorities until counsel has been made available to him, unless the suspect initiates further communication, exchanges or conversations with the police. *State v. Payne*, 833 So.2d at 935, citing *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). A cessation of questioning is not required, if the suspect makes a reference to an attorney that is ambiguous or equivocal, which causes a reasonable police officer, in light of the circumstances, to understand only that the suspect *might* be invoking the right to counsel. *State v. Payne, supra* at 935, *citing Davis v. United States*, 512 U.S. at 458, 114 S.Ct. at 2355. (emphasis in original).

In analyzing whether there has been a direct, clear, unequivocal, and unambiguous request for counsel, courts must give a broad, rather than narrow, interpretation to the suspect's request. *State v. Payne*, 833 So.2d at 936, *citing Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The admissibility of a confession or statement is a determination for the trial court and the trial court's ruling will not be overturned unless the preponderance of the evidence clearly favors suppression. *State v. Gant*, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1123.

*State v. Allen*, 06-778, pp. 4-6 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 747-48, *writ denied*, 08-2432 (La. 1/30/09), 999 So.2d 754 (footnote omitted).

*State v. Broussard*, 16-974, pp. 10-11 (La.App. 3 Cir. 6/13/17), 224 So.3d 23, 31-32.

The following colloquy occurred at the hearing on Defendant's motion to

suppress:

3

Q.     I'm also going to direct your attention to page twenty one I believe it is.  Can you start from the top of the page and read that for us.

A.     I said why don't you let let's [sic] make this a little easier why don't you tell us what you do remember and Samuel said like um I said Detective Hall said you remember going into the store.  It says  Samuel says I'm just trying inaudible this is crazy man that's why I  wish I wish [sic] I had a lawyer man you know what I'm saying somebody  I cause I don't like I don't know what the [sic] and um that's not specifically asking for a defense attorney.

Q.     What was your understanding of that?

A.     I thought he wanted legal advice just to speak to someone that had knowledge a little more knowledge of the law.

Q.     Did he actually request a defense attorney?

A.     No he did not.

Q.     Did he ask for the interview to be stopped?

A.     No.

Q.     Did y'all continue to ask him questions?

A.     Yes.

Q.     And did he voluntarily answer those questions?

A.     Yes.

The *Broussard* court explained:

The case referred to . . . by the trial court was *Davis*, 512 U.S. 452, 462, 114 S.Ct. 2350, 129 L.Ed.2d 362, wherein the defendant, during interrogation, stated that "[m]aybe I should talk to a lawyer."  The United States Supreme Court did not find that the statement was an unequivocal and unambiguous statement such that would require the interrogating officers to terminate the interview. Similarly, in *Allen*, 955 So.2d 742, after the defendant was advised he had the right to counsel during interrogation, he told the officers that he might want to speak with an attorney but wanted to think about it. He was given a cigarette and a drink and left alone to ponder. When asked if he was ready to give a statement, the defendant stated he was. Again he was *Mirandized* before he confessed to the offense. The officer then asked him to make a recorded statement. Once again, the defendant said he needed to think about it and asked for food. He was given lunch, another cigarette break, and then he confessed on tape. After he was charged, the defendant filed a motion to suppress his statements claiming that he had twice asked for counsel but was ignored. The fifth circuit found that the trial court did not err when it denied the defendant's motion to suppress the statements. Citing a case from this court, the fifth circuit stated:

4

> Additionally, in *State v. Chesson*, 03-606 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 173-175, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686, the Third Circuit upheld the trial court's denial of the defendant's motion to suppress his statement despite his statement to police officers while being transported that "he might–he felt like he should talk to an attorney." The Third Circuit concluded that "[t]he defendant's statement regarding his 'thinking' that he possibly 'should' speak with an attorney is not the type of unequivocal and unambiguous statement described above [in *Davis* ]."
>
> Similar to *State v. Chesson*, *supra*, the defendant in the present case twice stated he was "thinking" he "might" want an attorney. According to Detective Becnel, who the trial court found credible, the defendant never unequivocally stated he wanted an attorney. Under *Davis,* the defendant's statements that he thought he might want to speak to an attorney were ambiguous and cessation of questioning was not required.

*Id*. at 749-50 (footnote omitted).

> Finally, in *State v. Leger*, 05-11, pp. 31-32 (La. 7/10/06), 936 So.2d 108, 135, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007), the supreme court did not find that the statement, "I know I need to see one [a lawyer]" amounted "to an unambiguous request for counsel that would indicate to a reasonable police officer that the defendant was asking for counsel at that time."
>
> Considering, as noted above in *Allen*, 955 So.2d at 748 (citing *Payne*, 833 So.2d at 936, and *Jackson*, 475 U.S. 625, 106 S.Ct. 1404 (1986)) that the "courts must give a broad, rather than narrow, interpretation to the suspect's request[,]" we cannot say that the trial court erred in the current case when it found that the defendant's statement that he thought he wanted a lawyer was an unequivocal indication such that required the detectives to terminate the interview. The trial court did not err when it denied the defendant's motion to suppress his videotaped statements.

*Broussard*, 224 So.3d. at 34-35 (alterations in original).

Regarding the present case, the colloquy above indicates that the witness, Captain Billy Wolff of the Evangeline Parish Sheriff's Office, testified that he understood Defendant wanted some sort of legal help. This testimony may seem problematic in light of the issue at hand. However, at his own request, Defendant spoke separately to a prosecutor in the midst of the interrogation. This created an

5

ambiguity regarding Defendant's stated "wish." Further, considering *Broussard* and the jurisprudence cited therein, we find Defendant's remark that he wished he had a lawyer was not an unequivocal request for counsel. For the reasons discussed, the trial court did not err by denying the motion to suppress. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that the trial court erred by denying his *Batson* challenge to venire member Sheila Seria.

Defendant cites *State v. Nelson*, 10-1724, 10-1726, pp. 7-9 (La. 03/13/12), 85 So.3d 21, 27-29 (footnote omitted), which explained:

> In *Batson* [*v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1742 (1986)], the United States Supreme Court held that the use of peremptory challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. *Batson*, 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in *Batson* was initially adopted by this Court in *State v. Collier*, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D). . . .
>
> The Court in *Batson* outlined a three-step test for determining whether a peremptory challenge was based on race. Under *Batson* and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. *Batson*, 476 U.S. at 94-98, 106 S.Ct. 1712. *See also, Johnson v. California*, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); *State v. Sparks*, 1988-0017 (La.5/11/11), 68 So.3d 435, 468; *State v. Givens*, 99-3518 (La.1/17/01), 776 So.2d 443, 448.

Regarding venire member Seria, the following colloquies occurred:

BY THE COURT:

> Latonia Wilson is Juror number five. Sheila Seria?

BY THE STATE:

> The State will strike and for the record she um she's living in Ville Platte, she's been here, she said she didn't know anything about the case but I find that hard to believe. I wish she would

6

have said she known something it would have been more honest I think then what she gave.

BY MR. CHAPMAN:

She's African American I don't think there's been an articulated reason.

BY THE STATE MR. FONTENOT:

You (inaudible) challenge?

BY MR. CHAPMAN:

Yes.

BY THE STATE MR. FONTENOT:

All right. Your Honor for the record we used that would be our eighth challenges [sic] We used four on white and four on black. There's no. . .

BY THE STATE:

There's no pattern.

BY THE STATE MR. FONTENOT:

No pattern.

BY THE COURT:

Okay. Mr. Chapman.

BY MR. CHAPMAN:

I don't think they articulated any reasons on...

BY THE STATE MR. FONTENOT:

I don't think we have [to] articulate a reason.

BY THE COURT:

I think they have to articulate a race neutral reason.

BY THE STATE MR. FONTENOT:

There's no pattern.

BY THE COURT:

7

> It doesn't have to be a good reason. I'm good with the reason you gave I don't believe that's a racial (inaudible).

We note that the trial court skipped the first step of the analysis. However, the supreme court in *State v. Green*, 94-887, pp. 24-25 (La. 5/22/95), 655 So.2d 272, 288, explained:

> Regarding this first step of the *Batson* analysis, the trial court below did not expressly rule on whether the defendant had made out a *prima facie* case of purposeful discrimination; rather, he immediately moved to the second step and ordered the prosecutor to justify his use of peremptory strikes against black prospective jurors with race-neutral reasons. The court of appeal found this to be a tacit finding by the trial court that the defense had met its burden of going forward, since "there would have been no need for the prosecutor to explain his challenges if the trial judge had not found a prima facie case of discrimination." *Green, supra,* 634 So.2d at 509. We agree with the court of appeal that a trial judge's demand that a prosecutor justify his use of peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. In any case, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez, supra,* 500 U.S. at 359, 111 S.Ct. at 1866.

Thus, the first step of the analysis in the present case is moot. Regarding the second step, we find the State's reason to be race-neutral, as it focused on Seria's professed lack of knowledge regarding the case. However, Defendant argues that the State's articulated reason for the strike was factually incorrect, as Seria was never directly questioned regarding her knowledge of the case.

The second circuit has reasoned:

> [The defendant] submits that the state offered weak factual reasons for its first two peremptory challenges, of Mr. Roggerson and Ms. Bass, a suspicious age-based reason for another, Ms. Nobles, and no reasons at all (a "gut feeling") for the other two, of Ms. Turner and Ms. Price. He concedes that the district court's evaluation of discriminatory intent is due great deference. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). He nevertheless concludes that the state's reasons do not withstand *Batson* analysis and the case must be reversed.
>
> . . . .

The question is somewhat closer with Ms. Price. The cold record offers little guidance; at voir dire, in response to general questioning, she never volunteered an answer, and on four occasions when directly asked, she replied with a simple "yes" or "no." After observing the proceedings, the district court may well have felt that this translated to lack of attention or responsiveness, a valid race-neutral explanation. *State v. Ellis*, [05-1569 (La. 7/10/06), 936 So.2d 791]. The court stated for the record that both prosecutor and defense counsel were African Americans, and the prosecutor confirmed that she was under no instructions to assure that the jury had any specific racial or gender makeup. In the totality of the circumstances, we cannot say the court's decision to grant this peremptory challenge was an abuse of discretion.

*State v. Benton*, 42,121, pp. 6-11 (La.App. 2 Cir. 6/20/07), 960 So.2d 1192, 1196-1199, *writ denied*, 09-226 (La. 10/30/09), 21 So.3d 278. Further, the explanation given in the second step does not need to be persuasive or plausible. *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969 (2006). We find that the State's reason for its strike was most likely based on a simple factual mistake; as the reason did not implicate race, the trial court did not err in finding it to be race-neutral.

Proceeding to step three, the supreme court has stated:

In step three of the *Batson* analysis, the court must then determine whether the objecting party has carried his burden of proving purposeful discrimination. *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 2331-32, 162 L.Ed.2d 196 (2005); *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. This final step involves evaluating "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett* [*v. Elem*], 514 U.S. [765,] 768, 115 S.Ct. 1769 [1995].

*Nelson*, 85 So.3d at 32.

In the present case, Defendant has not carried his burden of proving purposeful discrimination. Defendant made no attempt at the hearing, nor does he attempt in brief, to demonstrate any facts to show that the strike of venire member Seria was based upon her race. As noted in the colloquy above, the State asserted that of the eight challenges it had used up to that point, "We used four on white and four on black." Defendant did not and does not refute that assertion. For the reasons discussed, this assignment of error lacks merit.

## CONCLUSION

Defendant's armed robbery conviction and sentence is vacated due to double jeopardy. His conviction and sentence for first degree murder is affirmed.

**AFFIRMED IN PART AND VACATED IN PART.**